**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|                           |     |                    |
|---------------------------|-----|--------------------|
| JOSHUA SANTOS,            | )   |                    |
|            Petitioner,    | )   |                    |
|                           | )   |                    |
| v.                        | )   | CIVIL ACTION       |
|                           | )   | NO. 22-cv-40149-PBS|
| MATTHEW DIVRIS,           | )   |                    |
|            Respondent     | )   |                    |
|                           | )   |                    |

<u>**REPORT & RECOMMENDATION**</u>

**June 5, 2023**

Hennessy, M.J.

Respondent Superintendent Matthew Divris ("Divris") moves to dismiss Joshua Santos'

("Santos") petition for writ of habeas corpus, [Dkt. No. 12], and deny his motion for a stay.  [Dkt.

No. 2].  Santos' motion for appointment of counsel is unopposed.  [Dkt. No. 3].  These motions

were referred to me and are ripe for adjudication.  [Dkt. No. 11].  For the reasons that follow, I

recommend the Court GRANT Divris' motion to dismiss [Dkt. No. 12], and that the Court DENY

as moot Santos' motion for appointment of counsel, [Dkt. No. 3], and Santos' motion for a stay.

[Dkt. No. 2].

**I.      Background**

In June 2015, a Hampden Superior Court jury convicted Santos of second-degree murder,

unlicensed possession of a firearm, and unlicensed possession of ammunition.  [Dkt. No. 1, p. 1].

The Superior Court sentenced Santos on second-degree murder to life imprisonment with the

possibility of parole; on the firearm conviction to a consecutive prison term of four and a half years

to five years; and on the ammunition conviction to a two-year house of correction sentence, to be

1

served concurrently with the sentence for second-degree murder.  [Dkt. No. 12-2, pp. 6-7].  In April 2016, Santos timely appealed his conviction to the Massachusetts Appeals Court ("MAC"). [Dkt. No. 12-3, p. 1].  While the appeal was pending, the MAC granted Santos a stay to pursue a new trial based on newly discovered evidence.  [Id., pp. 3-4].  On October 3, 2019, the Superior Court denied Santos' motion for a new trial.  [Dkt. No. 1, p. 4].

Santos appealed and the MAC affirmed his convictions and the denial of his motion for a new trial on July 16, 2021.  [Id., p. 2]; Commonwealth v. Santos, 100 Mass.App.Ct. 1102 (2021). Specifically, the MAC found "no basis for disturbing" the trial judge's witness credibility assessments and evidentiary rulings, and consequent denial of Santos' motion for a new trial. Santos, 100 Mass.App.Ct. at 1104.  Santos appealed to the Supreme Judicial Court ("SJC"), which consolidated Santos' appeal of his conviction and motion for a new trial.  [Dkt. No. 1, p. 4].  The SJC denied further appellate review of Santos' claims on September 14, 2021.  [Dkt. No. 12-4, p. 3]; Commonwealth v. Santos, 488 Mass. 1104 (2021).  Santos' motion to amend his sentence, filed with the Hampden Superior Court on November 12, 2021, was denied on December 17, 2021. [Dkt. Nos. 12-1, p. 12; 1, p. 4].[1]

Santos filed the instant petition on December 15, 2022, raising seven claims: (1) the motion judge erred in denying his motion for a new trial when newly discovered evidence showed that two key witnesses for the prosecution engaged in a campaign to lie about Santos' role in the offenses, causing a potential miscarriage of justice; (2) the trial judge erred in admitting testimony of two cooperating witnesses to extrajudicial statements by Santos' co-defendant, not in furtherance of the joint venture, relating to the co-defendant's disposal of the firearm used in the murder; (3) the trial judge erred in allowing the two cooperating witnesses to opine that the co-

---

[1] Though Santos' petition for habeas lists the Superior Court's order issuance date as December 19, 2021, Santos' state court docket provided by Divris indicates that it was issued on December 17, 2021.

defendant's teardrop tattoo signified that he had killed someone, namely, the murder victim; (4) appellate counsel was ineffective for failing to appeal Santos' motion to amend his sentence; (5) trial counsel was ineffective for not investigating and calling defense witnesses who would have impeached prosecution witnesses; (6) trial counsel was ineffective for not objecting to the trial judge's failure to charge the jury on the definition of reasonable doubt set forth in Commonwealth v. Russell, 470 Mass. 464 (2015), and appellate counsel was ineffective for failing to raise this charging error on appeal, or as a basis for a new trial; and (7) trial counsel was ineffective for failing to object and pursue a motion in limine to preclude testimony that Santos always carried a gun, and appellate counsel was ineffective for failing on appeal to base a claim of ineffective assistance of counsel on this same ground.  [Dkt. Nos. 1, 1-1, pp. 21-57].  Santos seeks a new trial and moves this Court to vacate the judgment against him or, alternatively, dismiss the indictments entirely.  [Dkt. No. 1-1, p. 15].  Santos separately moved on December 15, 2022 to stay his petition pending the resolution of unexhausted state court claims, [Id.], and moved for appointment of counsel.  [Dkt. No. 3].

## II.    Standard

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  In considering the merits of a motion to dismiss, the Court may look only to the facts alleged in the pleadings, documents attached as exhibits or incorporated by reference in the complaint and matters of which judicial notice can be taken.  Nollet v. Justices of Trial Court of Mass., 83 F.Supp.2d 204, 208 (D. Mass. 2000), aff'd, 248 F.3d 1127 (1st Cir. 2000).  Furthermore, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  Langadinos v. Am. Airlines, Inc., 199 F.3d 68, 69

(1st Cir. 2000).  Although a court must accept as true all factual allegations contained in a complaint, that doctrine is not applicable to legal conclusions.  Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Because Santos is proceeding pro se, the Court liberally construes his pleadings.  Haines v. Kerner, 404 U.S. 519, 520-21 (1972); see also Dutil v. Murphy, 550 F.3d 154, 158 (1st Cir. 2008) (noting that pro se pleadings are held to less demanding standards than those drafted by lawyers).  A court's solicitous discretion, however, is not unfettered.  See, e.g., Boivin v. Black, 225 F.3d 36, 43 (1st Cir. 2000) (stating that pro se litigants are not exempt from procedural rules); Ahmed v. Rosenblatt, 118 F.3d 886 (1st Cir. 1997) (noting that pro se status does not insulate a party from complying with procedural and substantive law).

## III.   Analysis

### A.  Santos' Petition for Writ

#### 1.  Statutory Time Bar

A person in custody pursuant to the judgment of a state court may file an application for a writ of habeas corpus on the grounds that "he is in custody in violation of the Constitution or laws or treaties of the United States[.]" Hugal v. Dolan, 353 F. Supp. 3d 94, 97 (D. Mass. 2018) (quoting 28 U.S.C.A. § 2254(a)).  Such a petition must be brought within one year from the date on which the state court judgment becomes final, i.e., "by the conclusion of direct review or the expiration of the time for seeking such review[.]"  28 U.S.C.A. § 2244(d)(1)(A).

Divris argues that Santos' petition should be dismissed because it is time-barred by the one-year limitations period.  [Dkt. No. 13, p. 3].  In relevant part, Section 2244 provides:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

> (A) the date on which the judgment became final by the
> conclusion of direct review or the expiration of the time for
> seeking such review ….

See also Sena v. Kenneway, 997 F.3d 378, 381 (1st Cir.), cert. denied, 142 S. Ct. 720 (2021)

("Federal habeas review for state prisoners is subject to a one-year limitations period, which

generally runs either from the conclusion of direct review or the expiration of the time allotted for

seeking direct review."). The time during which a properly filed application for state post-

conviction or other collateral review is pending is excluded from the one-year time limit. 28 U.S.C.

§ 2244(d)(2). "In sum, once a state conviction is final, the AEDPA's limitations period begins to

run. If the petitioner files an application for state post-conviction relief within a year after the

conviction is final…the limitations period is tolled." Drew v. MacEachern, 620 F.3d, 16, 20 (1st

Cir. 2010).

Divris asserts that Santos' conviction became final on December 13, 2021, ninety days

after the SJC affirmed the MAC's denial of Santos' motion for a new trial on September 14, 2021.

[Dkt. No. 13, p. 7]. Santos had ninety days from the SJC order finalizing his conviction to petition

for certiorari with the U.S. Supreme Court and did not do so. [Id. (citing Voravongsa v. Wall, 349

F.3d 1, 2 (1st Cir. 2003) (finding that petitioner's conviction became final ninety days after direct

appeal of his conviction was denied, as he did not file a petition for certiorari))]. Calculating the

one-year period from December 13, 2021, Divris states that Santos' deadline to file a habeas

petition was December 13, 2022. [Id.].[2] Therefore, Divris posits that because Santos filed his

petition two days later, on December 15, 2022, it is time-barred. [Id.; Dkt. No. 1].

---

[2] December 13, 2022 was a Tuesday; hence, Fed. R. Civ. P. 6 did not enlarge the date for filing on account of it being
a weekend or holiday.

I find no error in Divris' arithmetic and hence in his conclusion that Santos filed his petition two days after the deadline.  Moreover, Santos has not opposed Divris' motion to dismiss or the argument that Section 2244(d)(1)(A) bars his habeas petition.  While Santos may have hypothetically argued that equitable tolling should apply, he would bear the burden to demonstrate "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing."  Holland v. Fla., 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)).  Santos' submissions indicate no such "extraordinary circumstance."  See, e.g., Lerma v. Lewis, 921 F. Supp. 2d 949, 957 (N.D. Cal. 2013) ("A pro se state prisoner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling of the limitations period for filing a federal habeas petition.").

I therefore recommend granting Divris' motion to dismiss Santos' habeas petition on statute of limitations grounds.

        2.  <u>Santos' Unexhausted Claims and Motion for a Stay</u>

Divris next argues that even if this Court were to find Santos' petition timely, it must be dismissed as the petition includes at least four grounds he has not exhausted in state court.  [Dkt. No. 13, p. 8].  Santos concedes that he has failed to exhaust grounds four through seven of his petition and instead moves for a stay so he can perfect it.  [Dkt. No. 1, pp. 10-12].  Divris contends Santos has not met his burden to justify a stay.  [Dkt. No. 13, pp. 10-11].

Federal law incorporates the doctrine that a federal habeas court will entertain a state prisoner's petition for habeas relief "only after all state remedies available [for the claim] have been exhausted."  Ex parte Hawk, 321 U.S. 114, 117 (1944) (per curiam).  The First Circuit recently reiterated the "exhaustion principle" by which a Court is required to dismiss a "mixed

6

petition" containing both exhausted and unexhausted claims.  <u>Sena</u>, 997 F.3d at 383.  As an alternative to wholesale dismissal, however, a Court may "allow the petitioner to withdraw unexhausted claims[,]" permitting such petitioner to return to federal court to present his perfected petition with "relative ease."  <u>Id.</u> at 383-84.  This alternative became unworkable with the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which codified a strict exhaustion requirement and the one-year limitations period for habeas petitions. <u>Id.</u> at 384.  To address the tension between the AEDPA's limitations period and the longstanding practice of allowing the withdrawal of petitions containing unexhausted claims, in <u>Rhines v. Weber</u>, 544 U.S. 269, 275 (2005), the Court approved of "stay-and-abeyance" as a way of allowing state prisoners to file a federal habeas petition and seek additional time, subject to certain preconditions, to exhaust their state remedies and then have the stay lifted to decide the later-perfected petition.  <u>See id.</u> at 277-78.

The Court set out three preconditions for the grant of a stay-and-abeyance and clarified that courts should employ this alternative in "limited circumstances."  <u>Id.</u> at 277.  The petitioner must show good cause for his failure to have exhausted a particular claim in state court; that the particular claim is not "plainly meritless"; and that petitioner has not engaged in any "abusive litigation tactics or intentional delay" touching upon the prosecution of the claim.  <u>Id.</u> at 278.[3] "Where a stay is not warranted, a district court retains the 'discretion to dismiss the petition.'" <u>Mandeville v. Gaffney</u>, No. CV 17-11477-GAO, 2023 WL 2391561, at *3 (D. Mass. Mar. 6, 2023) (quoting <u>DeLong v. Dickhaut</u>, 715 F.3d 382, 387 (1st Cir. 2013)).

     i.   *Claim is Plainly Meritless*

---

[3] There is no suggestion that Santos engaged in abusive litigation tactics or intentionally delayed proceedings.

Beginning with the second precondition, a conclusion that Santos' unexhausted claims are "plainly meritless" is not clear from the limited record before this Court; however, there are reasons to doubt their merit. As a group, Santos' unexhausted claims attack the performance of his trial and appellate counsel. Sixth Amendment challenges require a showing of a constitutionally deficient performance and prejudice. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). Counsel's performance is presumed to be reasonable and a defendant raising such a claim must meet a high standard. See id. at 688-89.

Ground Four challenges appellate counsel's effectiveness for failing to appeal the denial of Santos' motion to reduce his sentence. [See Dkt No. 1-1, pp. 47-49]. To be clear, Santos' sentence was not illegal and Santos does not suggest as much. Rather, Santos suggests that appellate counsel was ineffective for failing to argue on appeal that the motion judge abused his discretion because, in Santos' view, a reduced sentence would be more proportionate to the sentence of others and would facilitate Santos' rehabilitation. [Id.]. Given that Santos was convicted of murder and that his sentence was not illegal, it would be very difficult for him to show prejudice from any alleged failure by appellate counsel.

Santos' Ground Five alleges that trial counsel was ineffective for failing to call witnesses who would have impeached the prosecution's evidence. [Id., pp. 50-54]. However, an attorney's strategic decision to call or not call a witness is rarely a basis for relief under the Sixth Amendment. See, e.g., Strickland, 466 U.S. at 690 ("[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."); Pina v. Maloney, 565 F.3d 48, 55-56 (1st Cir. 2009) (holding that counsel's strategic decision to "forgo an alibi defense and instead to focus" on misidentification "can only be viewed as a reasonable, tactical decision[,]" and that "even if reasonable minds could disagree about what defense strategy would have been

best in this case … 'the proper standard for [measuring attorney performance is that of reasonably effective assistance[.]'").   By the same reasoning, appellate counsel is not constitutionally ineffective for not urging on appeal that trial counsel was ineffective in this regard.

Santos' Ground Six alleges that trial counsel was ineffective for not objecting to the trial court's failure to rely on <u>Commonwealth v. Russell</u>, 470 Mass. 464 (2015) to charge the jury on the meaning of reasonable doubt.  In <u>Russell</u>, the SJC modified the previously operative uniform instruction on reasonable doubt, adopted from <u>Commonwealth v. Webster</u>, 59 Mass. 295 (1850), to further clarify the phrase "moral certainty."  470 Mass. at 477.  Santos does not explain how the trial court's jury instruction "largely tracked <u>Commonwealth v. Webster</u>[,]" rather than the model instruction under <u>Russell</u>.  [Dkt. No. 1-1, p. 54].[4]  Importantly, it is settled that "[j]ury instructions must be read as a whole[] … a single sentence in a court's jury instructions cannot be yanked from its contextual moorings and construed in a vacuum. … Rather, a reviewing court must consider whether jury instructions, taken as a whole, are reasonably likely to have misled the jury."  <u>United States v. Goris</u>, 876 F.3d 40, 48 (1st Cir. 2017) (internal citations omitted).  In any case, the alleged deficiency in Santos' counsel's failure to object is of little moment since counsel for Santos' co-defendant made this very objection to the reasonable doubt charge and the trial court rejected it.  Hence, Santos cannot show prejudice from his own attorney's failure to object.  For this same reason, in the absence of prejudice, Santos cannot show that appellate counsel was ineffective for failing argue trial counsel was constitutionally ineffective.

Lastly, Ground Seven alleges that counsel was ineffective for failing to object to a co-defendant's testimony that Santos "always carried a gun."  [Dkt. No. 1-1, p. 57].  However, Santos

---

[4] Santos has not been provided a transcript or any record of the reasonable doubt instruction given to the jury at his trial.  If the undersigned's recommendation to grant the State's motion to dismiss on statute of limitations grounds is not adopted, the undersigned recommends that the State be directed to answer the merits of Santos' petition and provide relevant court transcripts, pursuant to Rule 5(c) of the Rules Governing Section 2254 Cases.

concedes that his trial counsel filed "a motion in limine to preclude such testimony as prejudicial[,]" which the trial judge then considered (and rejected) in light of caselaw, according to Santos.  [Id.].  Santos' claim thus falls more squarely on the trial judge's alleged error regarding the "overwhelming prejudicial [effect] such a statement would have on [Santos]," rather than his counsel's performance.  [Id.].

Thus, while the record before this Court is limited with respect to Santos' trial and appellate counsel's performance and is not a basis to deny Santos' motion for a stay, there is reason to question the merits of Santos' unexhausted claims.

ii. *Good Cause for Failure to Exhaust*

Divris also argues that Santos fails to satisfy the first precondition for "stay-and-abeyance" because Santos does not show "good cause for his failure to exhaust." [Dkt. No. 13, p. 10].  Santos' motion for a stay urges that he is pro se, and that each of his unexhausted claims involves ineffective assistance of counsel.  [Dkt. No. 2].  He also asserts "[t]he Department of Corrections had taken all [his] legal documents … requested from [the] Court," his counsel "refused to appeal[,]" and that a stay is warranted "due to covid-19 restrictions[.]" [Dkt. Nos. 1, pp. 11-15; 1-1, p. 52].  I find Santos' showing of good cause to be insufficient to warrant a stay.

There has been little development in caselaw of the "good cause" requirement for a stay since Rhines; however, in Sena, the First Circuit emphasized that any such analysis is "fact-sensitive[,]" and directed district courts to conduct an individualized assessment of a petitioner's 1) ability to self-advocate; 2) diligence in attempting to present his claims; 3) efforts to navigate the procedural obstacles of exhaustion; and 4) the substantive character of the federal claims. Wilkerson v. Massachusetts, 605 F. Supp. 3d 178, 195 (D. Mass. 2022) (citing Sena, 997 F.3d at 386-86) (other internal citations omitted).  While a "[p]etitioner's pro se status does not constitute

good cause[,] … the First Circuit instructs that … the district court 'must factor a habeas petitioner's pro se status, as well as his attributes, skill sets, and circumstances, into its decisional calculus' and consider the impact of the petitioner's pro se status on his ability to exhaust his claims." Id. (quoting Sena, 997 F.3d at 387 and Sullivan v. Saba, 840 F. Supp. 2d 429, 437 (D. Mass. 2012)).

In recommending that Santos' motion for a stay be denied, I apply the four considerations articulated in Sena. First, Santos has demonstrated sufficient ability to self-advocate. His petition is, in a manner of speaking, exhibit A. It clearly identifies the bases for the relief he seeks and reflects an understanding of trial evidence and legal issues. Indeed, the fact that he has raised these arguments in his pro se petition belies the suggestion that pro se status is good cause to excuse his failure to exhaust. See Sullivan, 840 F. Supp. 2d at 437 ("[F]iling pro se does not excuse a petitioner from the exhaustion requirement.") (citing Rose v. Lundy, 455 U.S. 509, 520 (1982)). Moreover, Santos has ably submitted not only an intelligibly crafted petition, but also motions for a stay-and-abeyance and for appointment of counsel, all within the same day. [Dkt. Nos. 1, 2, 3]. Unlike the petitioner in Wilkerson, who did not "evidence an ability to litigate complex claims of ineffective assistance of counsel and newly discovered evidence[,]" 605 F.Supp.3d at 196, Santos' submissions can fairly be described as "well-crafted." See Sena, 997 F.3d at 387-88 (failing to find good cause for petitioner's failure to exhaust where the submitted petition "adequately evinced the petitioner's ability" to pursue state court relief and was "well-crafted"). Even if the Department of Corrections ("DOC") was withholding or had seized legal documents, as Santos alleges, Santos seems to have the information he needs to at least raise claims of ineffective assistance of counsel. Indeed, he does not specify what particular information or documents he would have needed to

exhaust his claims of ineffective assistance which he did not have from December 2021 to December 2022.

Second, Santos has failed to be diligent in prosecuting this petition. As discussed in Part A above, Santos' conviction became final on December 13, 2021. In the year Santos had under Section 2244 to file a habeas petition, he made no effort to obtain counsel, file a Rule 30 motion in state court for post-conviction relief, or timely prosecute the instant petition. As a comparative example, in <u>Wilkerson,</u> Judge Woodlock was persuaded that the petitioner "ha[d] made sufficiently diligent efforts … to obtain counsel and present his claims to the Superior Court[,]" to order state court transcripts, and file a motion for a new trial, all before filing a habeas petition. 605 F.Supp.3d at 196. On the basis of the record before the undersigned, Santos has not shown diligence. Indeed, Santos needed to do no more than file the substance of the instant petition as a Rule 30 motion to toll the one-year clock, as prescribed by Section 2244(d)(2). The fact that Santos did file the instant petition, albeit late, is evidence that he could have pursued post-conviction relief in state court and preserved his federal habeas options.

This last observation is also dispositive of the last two criteria. The fact that Santos filed the instant petition raising seven claims, including four claims of ineffective assistance of counsel, shows there were no significant impediments to exhausting his claims during the full year following the finality of his conviction. Santos mentions COVID-19 restrictions, but these did not impede his ability to file documents. Insofar as COVID-19 may have restricted access to the prison law library (if that was the case), Santos fails to show that such restrictions hampered his access to necessary information for a full year.

Similarly, Santos does not elaborate on how ineffective assistance of counsel claims are inherently complex. To the contrary, Santos articulates the ways in which he believes counsel's

performance was constitutionally defective.  Insofar as Santos' petition may insinuate that the complexity of Sixth Amendment jurisdiction prevented a timely petition, Santos does not explain why he did not move sooner for appointment of counsel.  Santos was represented by appointed counsel throughout the state trial and appeal; he even moved for appointment of new counsel. Thus, the record shows that Santos was familiar with his right to seek counsel; if he believed he needed the benefit of a lawyer to prosecute his ineffective assistance of counsel claims here, he failed to timely do so.

I therefore find that Santos' failure to exhaust his state remedies provides an alternative ground to grant Divris' motion to dismiss Santos' habeas petition.  Moreover, recognizing that the remedy of stay-and-abeyance is reserved for unusual cases, I find that Santos has failed to make the requisite showing of "good cause" and recommend denying Santos' motion for a stay.

### B.  Santos' Motion for Appointment of Counsel

Litigants have no constitutional right to counsel in habeas proceedings, including those that raise claims of ineffective assistance of counsel.  Nolan v. United States, 870 F. Supp. 2d 254, 265–66 (D. Mass. 2012) (citing Ellis v. United States, 313 F.3d 636, 652 (1st Cir.2002)).  However, the Court has the discretion to appoint counsel for an indigent litigant in "exceptional circumstances[.]"  Id. (quoting Cookish v. Cunningham, 787 F.2d 1, 2 (1st Cir.1986)).  Factors bearing on "exceptional circumstances" have included "the indigent's ability to conduct whatever factual investigation is necessary to support his or her claim, the complexity of the factual and legal issues involved, and the capability of the indigent litigant to present the case."  Id. (quoting Cookish, 787 F.2d 1 at 3); see also United States v. Mala, 7 F.3d 1058, 1063–64 (1st Cir. 1993) (because the indigent litigant "showed a fair likelihood of success" on his constitutional claim, the constitutional claim was "factually complex and legally intricate," and the prisoner was "severely

hampered" in his ability to investigate the factual and legal issues, he presented "the rare [S]ection 2255 case in which the appointment of counsel is warranted.").

For the reasons discussed above, I find Santos has not demonstrated exceptional circumstances of the kind warranting appointment of counsel in the context of his habeas proceeding.  Instead, I find Santos' case similar to <u>Nolan</u> in its lack of factual or legal complexity, and the absence of a need for further investigation.  870 F.Supp.2d at 266.  Alternatively, I recommend dismissing Santos' motion for appointment of counsel as moot in light of the recommendation to dismiss his habeas petition.

## IV.    Conclusion

For these reasons, I RECOMMEND granting Defendant Matthew Divris' motion to dismiss Santos' petition, and denying Plaintiff Joshua Santos' motions to stay the proceeding, and for appointment of counsel.

/s/ David H. Hennessy
David H. Hennessy
United States Magistrate Judge
